Elkhart County Lodge *et al. v.* Crary.

Filed Nov. 13, 1884.

---

No. 11,535.

ELKHART COUNTY LODGE ET AL. *v.* CRARY.

CONTRACT.—*Public Policy.*—*Constructive Fraud.*—An owner of adjacent property entered into a combination with others and agreed with the owners of a building in a city, if they would offer their building to the government for a nominal rent, to be used as a post-office for ten years, and use their personal influence and " proper persuasion " to secure its acceptance, the former would, in case of success, pay the latter a certain sum annually for ten years. The location was chosen and leased accordingly, one of the owners of the building, who was a personal friend of the P. M. General, having truthfully represented to him that the location was suitable, and their notes were given for the annual *instalments.*

*Held,* that the consideration of the notes was illegal, the agreement being against public policy, and therefore void.

SAME.—*Consideration.*—*Indivisible.*—Where the consideration of a contract is indivisible, and part is illegal, the contract is void.

From the Elkhart Circuit Court.

*A. D. Wilson,* — *Davis, J. H. Baker* and *J. A. S. Mitchell,* for appellants.

*W. L. Stonex,* for appellee.

ELLIOTT, C. J.—The material facts of this case are these: In October, 1878, the post-office in Goshen was kept in a room not affording suitable accommodations for the public, and there was a necessity for its removal. The postmaster was required by the government to furnish a room for the office and the rent was payable out of his salary. The value of adjacent property was enhanced by the location of the post-office and its rental value increased. The citizens of Goshen requested that the location of the office should be changed, and thereupon a competition arose between property owners of two localities, and property owners on Main street made a proposition to the department that they would furnish a suitable building for the office, and this proposition was made known to the appellants who were property owners on Market street, and were desirous of having the post-office located on that street. The appellants were the owners of a brick building on Market street, in course of erection, which was suitably located for the post-office; the appellee was the owner of real estate in the vicinity of appellants' building and was desirous of having the post-office located near his property. The appellants proposed to the appellee and other property owners, that they would fit up a room in their building with all suitable conveniences and equipments for a post-office and tender it to the government, rent free or for a nominal rent for ten years, on condition that the post-office should be maintained in the room for that period. A verbal preliminary agreement was made, wherein the property owners agreed that they would each pay to the appellants a certain sum yearly for ten years, provided the appellants would propose to the government to yield their room for a post-office at a nominal rent for ten years, and that "they would use all proper persuasion to secure the location of the post-office in their room." The notes in suit were executed pursuant to this agreement, and for the consideration therein specified. One of the appellants was a personal friend of the Postmas-

ter General, and represented to that officer that the location was a suitable one, and urged upon him the propriety of placing the office in appellants' building. The representation that the location was a suitable one was true. The proposition made by the appellants was accepted by the government and the nominal rent of $12 per annum was agreed upon, and the room leased for a period of ten years for a post-office.

The material deduction of fact from these subsidiary facts is that the parties formed a combination for the purpose of securing the location of a public office, and as part of the plan the appellants undertook that certain individuals of their number should use their influence with the government officers to effect the purpose of the combination, and that the agreement to pay for such services was contingent upon the success of the scheme.

It has long been established that a contract against public policy will not be enforced. This principle is firmly fixed and has often been applied to contracts. There can, therefore, be no doubt as to the existence of the rule; the only question is as to its applicability to the facts of this case.

Where the general public has an interest in the location of an office, a railroad station, or the like, a contract to secure its location at a particular place is held to be against public policy and not enforceable. There are very many cases holding that an agreement to locate a railroad station at a designated place is not enforceable because against public policy. *St. Louis, etc., R. R. Co.* v. *Mathers,* 104 Ill. 257; *Williamson* v. *Chicago, etc., R. R. Co.,* 53 Iowa, 126; S. C, 36 Am. R. 206, *vide* authorities n. 214. The principle upon which these cases proceed is that the public good, and not private interest, should control in the location of railroad depots, and this principle certainly applies with full force to an office of a purely public character, such as a post-office. We find in these railroad cases, and there are very many of them, a principle which supplies a rule governing such a case as the

present.    It is true that there is some difference in the views
of the courts upon the question whether an agreement for
the location of a depot is valid when it does not restrict the
location to the place named, and no other, but upon the gen-
eral principle there is entire harmony.    In the present case
the difference in the opinions of the courts is an unimportant
consideration, for here the location is restricted to one place,
and no other, for a period of ten years, and the case, there-
fore, falls within the holding of the cases most favorable to
the appellants.    We say that the location is restricted to one
place, for the reason that it is matter of judicial knowledge
that but one post-office can be located in the city of Goshen.
While the cases of which we have spoken establish a principle
which rules this case, there are others which, in their general
features, more nearly resemble the one at bar.    Closely an-
alogous in principle are those cases which hold that contracts
which may tend to the injury of the public service are void.
*Card* v. *Hope*, 2 B. & C. 661;   *Wells* v. *Foster*, 8 M. & W.
149; *Blachford* v. *Preston*, 8 T. R. 89; *Tool Co.* v. *Norris*, 2
Wall. 45; *Ashburner* v. *Parrish*, 81 Pa. St. 52.

There are many phases of injury to the public service, and
we do not deem it necessary to examine the cases upon the
subject, for we think it quite clear that a contract which is
made for the purpose of securing the location of an impor-
tant office connected with the public service for individual
benefit, rather than for the public good, tends to the injury
of the public service.    The case made by the evidence falls
fully within the principle that contracts which tend to im-
properly influence those engaged in the public service, or
which tend to subordinate the public welfare to individual
gain, are not enforceable in any court of justice.    Pollock
Prin. of Cont. 279; Anson Cont. 175; 1 Whart. Cont., sec-
tions 402 to 414 inclusive.    A wholesome rule of law is that
parties should not be permitted to make contracts which are
likely to set private interests in opposition to public duty or

to the public welfare.    This rule is recognized in our own case of *Maguire* v. *Smock*, 42 Ind. 1 (13 Am. R. 353), where it was held that an agreement to pay a consideration to a property-owner for signing a petition to secure the improvement of a street was void, although there was no fraud, and although the person to whom the promise was made was really in favor of the improvement.

It is not necessary that actual fraud should be shown, for a contract which tends to the injury of the public service is void, although the parties entered into it honestly and proceeded under it in good faith.    The courts do not inquire into the motives of the parties in the particular case to ascertain whether they were corrupt or not, but stop when it is ascertained that the contract is one which is opposed to public policy.    Nor is it necessary to show that any evil was in fact done by or through the contract.    The purpose of the rule is to prevent persons from assuming a position where selfish motives may impel them to sacrifice the public good to private benefit.    An English author says:    "But an agreement which has an apparent tendency that way, though an intention to use unlawful means be not admitted, or even be nominally disclaimed, will equally be held void."    Pollock's Principles of Contracts, 286.    In the case of *Tool Co.* v. *Norris, supra,* the court said:    "All agreements for pecuniary considerations to control the business operations of the government, or the regular administration of justice, or the appointments to public offices, or the ordinary course of legislation, are void as against public policy, without reference to the question, whether improper means are contemplated or used in their execution.    The law looks to the general tendency of such agreements; and it closes the door to temptation, by refusing them recognition in any of the courts of the country."

The case in hand is plainly distinguishable from those in which a promise is made to the public through its representatives.    Here the motive of the contracting parties was to

secure the location of a public office to advance their private interests, and not to benefit the public, and here, too, there was competition between two localities. The case, therefore, is one in which there should have been no influence brought to bear upon the decision of the contest except that of the public good.

The cases of *Peirce* v. *Ruley*, 5 Ind. 69, *Commissioners* v. *Perry*, 5 Ohio, 56, *State Treasurer* v. *Cross*, 9 Vt. 289, hold that a contract with the officers of the State for the benefit of the State is valid, but they clearly distinguish between the cases where a promise is made to an individual for his private benefit and those in which the promise is made to a public officer for the benefit of the public. This distinction is made in the case of *State* v. *Johnson*, 52 Ind. 197, and in the course of the opinion the following extract from the decision in *Clippinger* v. *Hepbaugh*, 5 Watts & S. 315, is approvingly quoted: "It matters not that nothing improper was done or was expected to be done by the plaintiff. It is enough that such is the tendency of the contract, that it is contrary to sound morality and public policy, leading necessarily, in the hands of designing and corrupt men, to improper tampering with members, and the use of an extraneous, secret influence over an important branch of the government." The difference between the two classes of cases is clearly stated in *Odineal* v. *Barry*, 24 Miss. 9, where it was said: "The members of the board of police, as individuals, will not receive any portion of the money for which the note was given. At the time of the contract it was not intended or expected that they should receive it. It was not a proposition by the defendants to pay them so much as individuals, in consideration that they would not change the site of the court-house. If it had been, it would have been clearly illegal, and could not have been enforced."

It is true that a contract to pay for professional services in fairly placing the facts of a case before the officers of government is valid. *Trist* v. *Child*, 21 Wall. 441 ; Smith Leading

Cases (7 Am. ed.), 692; *Bryan* v. *Reynolds,* 5 Wis. 200. But the contract in this case is not for professional services but for personal influence, and this constitutes an essential element, for personal influence is not a commodity for which money can be demanded.   The case of *Oscanyan* v. *Arms Co.,* 103 U. S. 261, cited by appellants, is directly against them upon this point.   In the course of the opinion in that case it was said :   " But, independently of the official relation of the plaintiff to his government, the personal influence which he stipulated to exert upon another officer of that government was not the subject of bargain and sale.   Personal influence to be exercised over an officer of government in the procurement of contracts, * * is not a vendible article in our system of laws and morals, and the courts of the United States will not lend their aid to the vendor to collect the price of the article. Numerous adjudications to this effect are found in the State and Federal courts.   This is true when the vendor holds no official relations with the government, though the turpitude of the transaction becomes more glaring when he is also its officer."   In *Trist* v. *Child, supra,* the court, in speaking of professional services, said :   " But such services are separated by a broad line of demarcation from personal solicitation."

While contracts for the payment of fixed fees for professional services are valid, yet, when the fees are made contingent upon success in obtaining the desired legislation, the contract sought, or the office asked of the government, the contract becomes so tainted with illegality as to render it void. " High contingent compensation," said Justice GRIER, " must necessarily lead to the use of improper means and the exercise of undue influence," and the decisions give approval to his discussion of the question of the legality of such contracts, and concur in the conclusion that all such contracts are against sound public policy.   *Marshall* v. *Baltimore, etc., R. R. Co.,* 16 How. 314.   *Meguire* v. *Corwine,* 101 U. S. 108 ; *Oscanyan* v. *Arms Co., supra,* see opinion p. 274; *Clippinger* v. *Hepbaugh, supra; Wood* v. *McCann,* 6 Dana (Ky.) 366 ; *Mills*

v. *Mills,* 40 N. Y. 543; *Ormerod* v. *Dearman,* 100 Pa. St. 561; S. C., 45 Am. R. 391.

The contract before us has two infirmities, one of an agreement for the use of personal influence, and another of an agreement for compensation dependent upon the contingency of success. That we are correct in saying that the agreement is dependent upon a contingency is shown by the fact that the consideration became payable only in the event that the post-office was located and maintained in appellant's building.

Doubtless, a contract to assist a property-owner in fitting up or purchasing a building to be given to the government for public use would be valid, but in the present instance this was not the character of the consideration of the notes in suit, although such an element may have formed part of the consideration. The consideration of the notes is indivisible, and the illegal can not be separated from the legal, and, under the familiar rule, that where the consideration is in part illegal, and there can be no separation, the whole contract is void. The contract before us must be held invalid because of the illegality of the consideration. Judgment affirmed.

