Filed March 9, 1894.

◆

16,707.

## BROWN v. FIRST NATIONAL BANK OF COLUMBUS.

CONTRACT.—*Public Policy.—Judicial Officer.—Money Consideration for Acts of.*—All agreements for pecuniary considerations to control the regular administration of justice are void as against public policy, regardless of the good faith of the parties, and without reference to the question as to whether improper means are contemplated or used in their execution.

SAME.—*Justice of Peace.—Agreement, for Contingent Reward, to Arrest An Accused.*—A justice of the peace before whom an affidavit is filed charging a person with the crime of larceny, although his powers are merely those of an examining court, can not enter into a valid contract with the prosecuting witness to arrest the accused for a pecuniary consideration, when the recompense is contingent upon the amount of property that may be recovered.

SAME.—The mere facts that the affidavit, after being filed before the justice, was taken away and not returned; that the justice made no record of it, issued no warrant; and that the accused was never brought before him, does not give validity to the void contract.

SAME.—*Estoppel.—Acceptance of Benefits Under Contract Void as Against Public Policy.*—A person who has derived benefit from a contract which is void as against public policy is not estopped thereby to defend against such contract when it is sought to be enforced against him.

From the Bartholomew Circuit Court.

*F. T. Hord* and *M. D. Emig,* for appellant.
*S. Stansifer* and *C. S. Baker,* for appellee.

DAILEY, J.—This was an action by the appellant against the appellee, in the court below, to recover a reward upon an alleged contract made and entered into by the parties, wherein the appellee agreed to pay the ap-

pellant a reward for the capture of one William H. Schreiber, who was the appellee's bookkeeper, and who had embezzled about one hundred thousand dollars in money and bonds belonging to the appellee, and fled to Canada. Schreiber was arrested by the appellant and the money and bonds restored. The complaint is as follows:

"The plaintiff, James S. Brown, complains of the first national bank of Columbus, Indiana, defendant, says that the plaintiff was, at the time of the facts hereinafter averred, and prior thereto, a citizen and resident of the city of Columbus, in the State of Indiana; that the defendant was then and for a long time prior thereto, and is now, a corporation duly organized under the acts of Congress in such cases made and provided for the purpose of carrying on a national bank at the city of Columbus, in Bartholomew county, State of Indiana.

"Plaintiff avers that the defendant as such corporation was carrying on and conducting a banking business in the said city, and had in its employ, as bookkeeper, one William H. Schreiber, and while acting as such employe of the defendant, the said Schreiber, at the county of Bartholomew, and State of Indiana, did steal, take, embezzle, and take away from the defendant, money and property of the defendant and appropriated the same to his own use as follows, to wit: The sum of fifty thousand dollars ($50,000) in money; and bonds, promissory notes, and books of defendant of the value of one hundred thousand dollars ($100,000); and said Schreiber fled and escaped to Canada, and beyond the limits of the United States. And the defendant being desirous of capturing and arresting said Schreiber, the plaintiff and defendant made and entered into a contract in writing, duly signed by Francis T. Crump, vice-president; L. K. Ong, cashier, and W. O. Hogue, director of said defendant, for the

defendant; which is now in the possession of defendant, and plaintiff files a copy thereof with this complaint, who were duly authorized thereto by said defendant; wherein and whereby the plaintiff agreed to engage actively in the capture of said William H. Schreiber and arrest or cause,to be arrested the said Schreiber. The defendant agreed to pay to plaintiff the sum of forty dollars ($40) per month, and his fare to and from the City of Detroit, in the State of Michigan, and his board while there, and if the plaintiff secured said Schreiber's arrest the defendant agreed to and with the plaintiff to pay him one-fourth, or twenty-five (25) per cent. of all the money or property restored to defendant by said Schreiber. If plaintiff was unsuccessful in such arrest the defendant agreed to pay to plaintiff forty dollars ($40) per month and his board and fare while engaged in an effort for his capture.

"The plaintiff avers that he immediately entered upon the performance of said contract, and was actively engaged in the attempt to capture and arrest said Schreiber from the 15th day of April, 1890, until the 28th day of September, 1890, when said Schreiber was arrested and returned to the City of Columbus, in the State of Indiana. The plaintiff on the — day of September, 1890, arrested and caused to be arrested the said Schreiber at the said City of Detroit, in the State of Michigan, and thereafter, at defendant's request, he was immediately transferred to the county of Bartholomew, in the State of Indiana, where said crime was committed, and delivered to the sheriff of said Bartholomew county, and thereafter said Schreiber was duly indicted by the grand jury in the Bartholomew Circuit Court for his said crime, and thereafter on the 10th day of October, 1890, he was tried and convicted in said court and sentenced to im-

prisonment in the penitentiary for the term of twelve (12) years, and he is now in the penitentiary serving out his time under such conviction.

"The plaintiff avers that the said defendant received and recovered of said money and property, stolen and embezzled as aforesaid, from said Schreiber, the sum of fifty thousand dollars in money; and notes, stocks, bonds, books, and other personal property of the value of one hundred thousand dollars; all of which was restored to defendant and is in its possession. The plaintiff avers that he has fully performed said contract on his part, and the defendant has failed and refused to pay to plaintiff for the time expended by him in his said effort to arrest said Schreiber, and has failed and refused to pay him the said sum of twenty-five per cent. of the value of said money and property restored to defendant, although requested to do so, and the defendant is indebted to plaintiff under said contract in the sum of thirty-seven thousand and five hundred dollars ($37, 500), which is due plaintiff from defendant and remains wholly unpaid; and the plaintiff has no knowledge of any legitimate expense for which defendant is entitled to a reduction, and plaintiff denies that there are any other expenses to be deducted.

"Wherefore plaintiff demands judgment for thirty-seven thousand and five hundred dollars and for all other proper relief.                    HORD & EMIG,
                                        *Attorneys for Plaintiff.*

"2. The plaintiff, for second and further paragraph of complaint herein, says, that the plaintiff was at the time of the facts hereinafter averred, and prior thereto, a citizen and resident of the City of Columbus, in the State of Indiana; that the defendant was then, and for a long time prior thereto, and is now a corporation duly organized under the acts of Congress, in such cases made

and provided, for the purpose of carrying on a National Bank at the City of Columbus, in Bartholomew county, State of Indiana; plaintiff avers that during all of said time the defendant as such corporation was carrying on and conducting a banking business in said City of Columbus, and had in its employ, as bookkeeper, one William H. Schreiber, and while acting as such employe of the defendant the said Schreiber, at the county of Bartholomew and State of Indiana, did steal, take, embezzle, and carry away from the defendant, money and property of the defendant, and appropriated the same to his own use as follows, to wit: The sum of fifty thousand dollars in money, also bonds, promissory notes, stocks and books of the defendant to the value of one hundred thousand dollars; and the said Schreiber fled and escaped beyond the limits of the State of Indiana and the United States, into the Dominion of Canada. And the defendant, being desirous of capturing and arresting said Schreiber, and recovering said money and property so stolen and embezzled, the plaintiff proposed in writing, duly signed by him, to engage actively in the capture of said William H. Schreiber, and arrest, or cause to be arrested, the said Schreiber, and cause him to be delivered to the Detroit police, or any person or place the defendant might select, and said defendant was to pay to the plaintiff forty dollars per month and his fare to and from Detroit, in the State of Michigan, and his board while there; and if plaintiff should secure the arrest and delivery, as aforesaid, defendant was to pay to plaintiff one-fourth, or 25 per cent., of all the money or property restored to defendant by said Schreiber, after deducting all expenses that defendant may have incurred. The said per cent. to be paid only out of such restored funds, and after it was clearly and fully in defendant's possession; if plaintiff was unsuccessful, the board and fare of

plaintiff and forty dollars per month was to be plaintiff's only charge; and the plaintiff's work was to cease at defendant's command; and said defendant accepted said proposition and caused said acceptance by the defendant to be written on said offer and proposition of plaintiff for and on behalf of the defendant, and to be signed by L. K. Ong, cashier of defendant; Francis T. Crump, vice-president, and W. O. Hogue, director of defendant, for and on behalf of the defendant; a copy of said contract is filed herewith and made a part hereof, the original of which is in defendant's possession.

"Plaintiff avers that he immediately entered upon the performance of said contract and was actively engaged in an effort to capture and arrest Schreiber from the 15th day of April,1890,untilthe28thdayof September,1890,whensaid Schreiber was arrested, and, at the request of defendant, returned to the city of Columbus, in the State of Indiana.

"The plaintiff, on the —— day of September, 1890, arrested, and caused to be arrested, the said Schreiber at the city of Detroit, in the State of Michigan; and thereafter, at the request of defendant, he was immediately transferred to the county of Bartholomew, in the State of Indiana, upon a warrant duly issued by the governor of the State of Michigan, upon requisition made by the governor of the State of Indiana upon him for the arrest and apprehension of said Schreiber; and said Schreiber was duly delivered to the custody of the sheriff of said Bartholomew county, in said State of Indiana; and thereafter said Schreiber was duly indicted by the grand jury in the Bartholomew Circuit Court for his crime; and thereafter, on the 10th day of October, 1890, said Schreiber was tried and sentenced by said court to imprisonment in the penitentiary for the term of twelve years, and he is now in the penitentiary at the city of Jeffersonville, in said State, serving out his time under

said sentence. The plaintiff avers that the said Schreiber restored to defendant the said sum of fifty thousand dollars in money, and said notes, bonds, stocks, books, and other personal property of the value of one hundred thousand dollars, and turned over to said defendant money, real estate, and personal property in full payment and satisfaction thereof, which said defendant has sold and reduced to cash and received by the defendant; and said property, so stolen and embezzled, was fully restored to the defendant; and the said defendant now possesses and holds the same, and the plaintiff has no knowledge of any legitimate expenses to which defendant is entitled as a reduction upon this contract, and plaintiff denies that he has paid out any legitimate expenses to be deducted from said one-fourth of money and property restored to be paid to plaintiff.

"The plaintiff avers that he has fully performed said contract on his part and the defendant has failed and refused, and still fails and refuses, to pay to plaintiff anything for his said time expended by him in his said effort to apprehend said Schreiber, and has failed and refused, and still fails and refuses, to pay to plaintiff the said sum of twenty-five per cent. of the value of said money and property restored to defendant by said Schreiber, although requested to do so; and the defendant is indebted to the plaintiff, under said contract, in the sum of $37,500, which is due and wholly unpaid.

"Wherefore, plaintiff demands judgment for $37,500 and all proper relief.　　HORD & EMIG,

"Attorneys for Plaintiff.

" 'Copy.'

"No. 1066.　　　　WM. J. LUCAS, President.
"First National Bank　　F. T. CRUMP, Vice-Pres't.
"of　　　　L. K. ONG, Cashier.
"Columbus, Ind.

"COLUMBUS, IND., April 15, 1890.
"*L. K. Ong, Cashier:*

"I make the following proposition:   I will go to Detroit, Michigan, and vicinity, prepared to engage actively in the capture of William H. Schreiber, your defaulting book-keeper, and deliver to the Detroit police, or any person or place you may select.   My compensation to be as follows:   You pay me forty dollars per month, my fare to and from Detroit, and my board while there.   If I secure Schreiber's arrest and delivery, as above, you are to pay me one-fourth (or 25 per cent.) of all the money or property restored to you, after deducting all expenses you may have incurred.   This 25 per cent. to be paid only out of such restored funds, and after it is clearly and fully in your possession.   If unsuccessful, my board, my fare and forty dollars per month my only charge.   Work to cease at your command.

"JAMES S. BROWN.

"Accepted for the Bank:
   "L. K. ONG,
   "F. T. CRUMP,
   "W. O. HOGUE,
       "Committee."


The appellee filed the following answer:

"1st.   The defendant in the above entitled cause, for answer to plaintiff's complaint herein, says that at the time of the execution of the contract sued on herein, and for a long time prior and subsequent thereto, the plaintiff, James S. Brown, was an acting justice of the peace, duly elected and qualified, in and for Columbus township, in Bartholomew county, in the State of Indiana; and, further, that at the time said contract was executed, and prior and subsequent thereto, there was filed and

pending before said plaintiff, as justice as aforesaid, an affidavit charging the said William H. Schreiber, mentioned in plaintiff's complaint, with the larceny of certain money and property alleged in plaintiff's complaint to have been stolen by said Schreiber from the defendant herein; that the apprehension and capture contemplated and mentioned in the contract sued on herein was of and concerning the said William H. Schreiber, and on account of the matters and facts charged in said affidavit.

"Wherefore, and by reason of the foregoing, defendant says said contract was, and is, null and void.

"STANSIFER & BAKER,
"Attorneys for Defendant.

"2d. For second paragraph of answer herein, defendant denies each and every material allegation contained in plaintiff's complaint.

"STANSIFER & BAKER,
"Attorneys for Defendant."

The appellant filed a demurrer to first paragraph of answer, which was overruled, and appellant excepted thereto.

He thereupon filed his reply to the first paragraph of answer, as follows:

"The plaintiff, James S. Brown, for reply to defendant's first paragraph of answer, says that said Schreiber committed said crime set forth in the complaint and answer, on the 26th day of November, 1888. He avers that said Schreiber immediately fled from the State of Indiana and the United States of America, to the Dominion of Canada. He avers that on or about the 12th day of July, 1889, after said Schreiber had fled, and while in Canada, which defendant well knew, one L. K. Ong, the cashier of defendant's bank, made an affidavit charging said Schreiber with the commission of said crime, and filed

the same with plaintiff as a justice of the peace. He avers that he never issued any warrant on said affidavit for the arrest of said Schreiber. He avers that said Ong, cashier, and the president and officers of defendant, and the counsel representing the defendant, and the prosecuting attorney in and for Bartholomew county, immediately after the filing of the same, took and carried away said affidavit; and the same was never, at any time thereafter, on file with plaintiff as a justice of the peace, or in his hands, or in his possession; and the plaintiff made no record thereof in his office.

"He avers that said Schreiber was never brought before plaintiff upon said charge, and the plaintiff never understood that said Schreiber was to be brought before him as such justice of the peace on said charge.

"He avers that said contract was made between plaintiff and defendant on the 15th day of April, 1890, while said Schreiber was still at large, and residing in the Dominion of Canada, and outside of and beyond the limits of the State of Indiana and the United States of America, which defendant well knew; said Schreiber had never theretofore been arrested on said charge, and at the time of making said contract, said affidavit was not on file with the plaintiff as a justice of the peace, and the same had never been returned by defendant's said officers or by any one; and the plaintiff supposed and believed that said Schreiber had been indicted for said crime by the grand jury of Bartholomew county, in the State of Indiana, whereat said crime was committed; and the plaintiff supposed and believed that said indictment was pending against said Schreiber, and had no knowledge to the contrary up to and until after the time of his arrest and return to Bartholomew county, Indiana; and upon his return to said county said Schreiber was never brought before plaintiff to answer for said crime or any

charge whatever. He avers that said Schreiber was returned to the city of Columbus, in Bartholomew county, Indiana, under arrest upon said charge, on the 28th day of September, 1890, and the defendant procured and caused said Schreiber to be held in jail, in the custody of the sheriff of said county, until defendant caused an indictment to be found against him; and said sheriff held said Schreiber, upon the request of defendant, until indictment was found against him; and on the 9th day of October, 1890, the grand jury of said Bartholomew county returned an indictment, in the Bartholomew Circuit Court, against him for said crime, and thereafter said Schreiber was held in custody by the sheriff of said county on said indictment, until he was convicted of said crime and sentenced to the penitentiary of the State of Indiana; and the plaintiff never at any time took, assumed, or had jurisdiction of said Schreiber as a justice of the peace, on the charge of said crime, and did not know or understand that he could or was to take jurisdiction of said Schreiber upon any prosecution for crime at the time of making said contract or the rendition of said services by him.        HORD & EMIG,

"Attorneys for Plaintiff."

The appellee filed a demurrer to the reply, which was sustained by the court, to which ruling the appellant excepted at the time.

The appellant failing and refusing to reply further, judgment was rendered against him, from which he prosecutes this appeal.

The errors assigned are as follows:

1st. The court erred in overruling the demurrer filed by the appellant to appellee's first paragraph of answer.

2d. The court erred in sustaining the demurrer filed by appellee to appellant's reply to appellee's first para-

graph of answer, and rendering judgment against appellant for refusing to reply further.

The first paragraph of the answer above set out, taken in connection with the complaint, presents this state of facts: The appellant, then a justice of the peace, before whom an affidavit was at the time filed, charging one William H. Schreiber with the crime of larceny, entered into a contract with the appellee by which the appellant agreed to go to Detroit, Michigan, and arrest and deliver said Schreiber for forty dollars per month, fare to and from Detroit, and board while ·there, and a contingent fee of twenty-five per cent. of all money or property restored to the appellee, after deducting all expenses the appellee may have incurred. By the terms of the agreement on which recovery is sought, a judicial officer engages to doff the judicial ermine, and for a stipulated price assume the role of a detective in a cause pending before him for judicial consideration. It places the liberty of the accused at the mercy of a court subject to a fee of twenty-five per cent. in the event of his success in causing the arrest of the accused. If such undertaking is permissible in a justice of the peace, and constitutes a binding obligation, it is equally so in a circuit, federal or other judicial officer. The moral turpitude of the transaction would be the same in either instance. To preserve the integrity of the law and the good order of society, public policy forbids this class of contracts. It has long been established that a contract against public policy will not be enforced. *Elkhart County Lodge* v. *Crary*, 98 Ind. 238 (240).

An agreement of this character shocks the moral sense of the people as being grossly wrong and injurious. In Greenhood Public Policy, page 337, it is said: "Any contract by one acting in a public capacity, which restricts the free exercise of a discretion vested in him for

the public good, is· void." The same author, on page 338, says: "The policy of the law will not allow an officer to do more than his official duty with a view to increase his fees and emoluments. It can not change the principle because it happens that he has made a bad bargain. The rule is intended to keep public officers within the line of their duties, and not allow them to take advantage of their official position to make money by entering into engagements which tempt them to abuse the process of the courts, and oppress those who are to be affected by their official proceedings."

In *Collins* v. *Blantern*, 2 Wilson's Com. Pleas Reports 341, p. 350, WILMOT, C. J., said, in speaking of an illegal contract: "This is a contract to tempt a man to transgress the law; to do that which is injurious to the community. It is void by the common law, and the reason why the common law says such contracts are void is for the public good. You shall not stipulate for iniquity. All writers upon our law agree in this, no polluted hand shall touch the pure fountains of justice."

In line with this expression ELLIOTT, J., speaking for the court in *Stropes* v. *Board, etc.*, 72 Ind. 42, pp. 43 and 44, said: "There is neither a more wholesome nor a sounder rule of law than that which requires public officers to keep themselves in such a position as that nothing shall tempt them to swerve from the straight line of official duty. Officers ought not to be permitted to place themselves in a position, in which personal interest may come into conflict with the duty which they owe to the public."

In *Elkhart County Lodge* v. *Crary, supra*, p. 241, the court say "that contracts which may tend to the injury of the public service are void," and contracts which will tend to subordinate the public welfare to individual gain are not enforceable in any court of justice. It fol-

lows, to state the rule comprehensively, that all agreements relating to proceedings in the courts, civil or criminal, which may involve anything inconsistent with the full and impartial course of justice therein, are void, though not open to the charge of actual corruption. 3 Am. and Eng. Encyc., etc., 879 (881); Bishop Contracts, section 549. And this is true regardless of the good faith or intent of the parties at the time the contract was entered into, or the fact that no evil resulted by or through the contract. This proposition finds expression in the words of Judge ELLIOTT, in *Elkhart County Lodge* v. *Crary, supra,* on page 242, as follows: "It is not necessary that actual fraud should be shown, for a contract which tends to the injury of the public service is void, although the parties entered into it honestly and proceeded under it in good faith. The courts do not inquire into the motives of the parties in the particular case to ascertain whether they were corrupt or not, but stop when it is ascertained that the contract is one which is opposed to public policy. Nor is it necessary to show that any evil was in fact done by or through the contract. The purpose of the rule is to prevent persons from assuming a position where selfish motives may impel them to sacrifice the public good to private benefit."

In Pollock's Principles of Contract, 286, it is said: "But an agreement which has an apparent tendency that way, though an intention to use unlawful means be not admitted, or even be nominally disclaimed, will equally be held void."

All agreements for pecuniary considerations to control the regular administration of justice, are void as against public policy, without reference to the question whether improper means are contemplated or used in their execution. The law looks to the general tendency of such agreements; and it closes the door to temptation, by re-

fusing them recognition in any of the courts of the country. *Tool Co.* v. *Norris*, 2 Wallace (U. S.), 45 (56); *State* v. *Johnson, Admr.*, 52 Ind. 197; *Clippinger* v. *Hepbaugh* (*Pa.*), 5 W. & S. Rep. 315; *Oscanyan* v. *Arms Co.*, 103 U. S. 261.

Greenhood on Pub. Policy, p. 5, thus lays down the rule: "The question of the validity of the contract does not depend upon the circumstance whether it can be shown that the public has, in fact, suffered any detriment, but whether the contract is, in its nature, such as might have been injurious to the public. It matters not that any particular contract is free from any taint of actual fraud, oppression or corruption. The law looks to the general tendency of such contracts."

The evil tendency of the contract in suit is clearly manifest. The mere statement of it shocks the sense of justice and fair play. By virtue of the contract, appellant assumed a position where selfish motives might have impelled him to sacrifice the public good for private gain; for there is no greater public good than the right of every person charged with the commission of a crime to have a fair and impartial hearing; and there is no higher security for that right than the preservation of the courts free from corrupting influences. While there is no imputation of actual wrong committed in this case, it may be properly claimed that a contract of this character puts it in the power of a corrupt and designing official, in the event the property and money out of which to get his per cent. should not willingly be turned over, to compel payment, after arrest, through fear of commitment, though the accused might be innocent; or, if the accused were guilty, the temptation would be presented to acquit for a like reason.

The wrong of such a contract consists in the fact that the influence of the compensation—the contingent fee of

twenty-five per cent.—does not necessarily stop with the arrest of the accused, but continues until the property and money shall be restored. High contingent rewards may lead to improper means and the use of undue influence.

The duties of appellant, as counsel suggest, terminated with the arrest, but not his interest and power. The contract in suit did not require appellant to do any act injurious to the interest of Schreiber; but it allowed and induced it. As shown by the authorities, judicial officers are not permitted to place themselves in a position in which personal interest may come in conflict with the duties which they may owe to the public. They are prevented from even assuming such a position. It is the tendency of the contract, and not its binding obligation to wrong, which the courts consider. No design need, therefore, be manifest—the motive is not inquired into.

It is true, as appellant's learned counsel contend, a justice may lawfully make an arrest out of his jurisdiction for an offense committed out of his presence—the thing which he undertook and contracted to do was in itself lawful; but that is only part of this case.

We are now confronted with the question: Can a justice before whom an affidavit is filed charging an individual with the crime of larceny, enter into a valid contract with the prosecuting witness to make an arrest of such person for a pecuniary consideration, when the recompense is contingent on the amount of property that may be recovered? What the law authorizes can not be against public policy; but it may be the subject of a contract which is against public policy. The question is not: Does the law authorize the arrest, but does it authorize the contract? It does not follow that a contract to do what is lawful within itself is not against public policy. It is lawful to petition the city council for the

improvement of the street in front of one's property, but not to do so for a consideration moving from another. The affirmation of good faith and denial of fraud do not relieve the act of culpability.   Courts will not aid either party to enforce such contracts, but leave them where they find them.   *Maguire* v. *Smock*, 42 Ind. 1; *Elkhart County Lodge* v. *Crary, supra.*

A justice has control of his fees.   He may tax them large or small, so they are not in excess of the amount provided for by statute.   It is lawful for him to make no charge.   But he can not, in advance, enter into a valid contract binding him to make no charge for services to be rendered.   A contract whereby a justice of the peace agrees to charge smaller fees in suits to be brought before him by a certain corporation, than are prescribed by statute, and that such fees shall not be collected unless paid by the defendants to the corporation, is contrary to public policy, and void.   *Hawkeye Ins. Co.* v. *Brainard* (Iowa), 33 N. W. Rep. 603; *Willemin* v. *Bateson*, 63 Mich. 309.

When a candidate for the office of judge, in order to secure his election, pledges himself, if elected, to perform the duties of such office for a sum less than one-half of the fees allowed by law, and voters are thereby induced to vote for such candidate, and he thus receives a majority of the votes cast for such office at such election, his election, secured by these means, is invalid as against public policy.   *State, ex rel.,* v. *Collier*, 72 Mo. 13, 8 Cent. L. J. 495.

The fact that the thing contracted for was in itself lawful, and that the defendant was benefited by the agreement, do not give the plaintiff any right of recovery. *Gleason* v. *Chicago, etc., R. Co.*, 43 N. W. Rep. 517.

Numerous illustrations might be cited to sustain the doctrine.   The argument that in cases like the present

the justice sits merely as an examining court and can commit only, while in other cases he may convict and assess the penalty, has little force. The judicial function is the same in each instance. The judgment or discretion of the court, which may be improperly influenced, is exercised in each class, with this difference as to results—in one case the finding is "guilty," and in the other "probably guilty."

The contracts of police officers to make arrests beyond their territorial jurisdictions stand upon a different footing—they have no judicial functions to perform.

The contention of counsel that the appellee, having received the benefit of the contract, is estopped to defend against it, on the principle that a corporation which has such benefit is estopped to assert that it had no power to contract, is unsound as applied to the case at bar. The rule suggested applies to cases where private rights alone are concerned, while in contracts void as against public policy the public is interested. The public concern can not be made a matter of private bargain. A number of maxims apply to interdict the enforcement of such a contract; and many decisions hold that the receipt of benefits and retention of property under such a contract give no right of recovery. If the contract has not been executed it will not be enforced; if it has been executed the law will not extend relief. It can not be rendered valid by invoking the doctrine of estoppel. *Hutchins* v. *Weldin*, 114 Ind. 80; *Perkins* v. *Jones*, 26 Ind. 499; *Dumont* v. *Dufore*, 27 Ind. 263; *Root* v. *Stevenson's Admr.*, 24 Ind. 115; *Gleason* v. *Chicago, etc., R. Co.*, *supra;* *Wheeler* v. *Wheeler*, (N. Y. Supr. Ct.,) 5 Lans. 355; *Snyder* v. *Willey*, 33 Mich. 483; Greenhood on Pub. Policy, pages 2, 3 and 6, note 3; Broom's Leg. Maxims, p. 729, section 730; 7 Wait's Actions and Def., 92.

The demurrer to the answer was properly overruled.

The matters alleged in the reply, by which it was sought to avoid the answer, are:

1. Good faith on the appellant's part at the time the contract was entered into.

2. That the affidavit, after being filed, was taken away and not returned.

3. That appellant made no record of the affidavit in his office.

4. That appellant issued no warrant upon the affidavit.

5. That Schreiber was never brought before appellant in said cause.

The first and fifth points have been fully considered by the authorities heretofore cited.

It is well settled that the validity of the contract can not be tested by the good faith of the appellant, nor by anything occurring subsequent to its execution. It is equally clear that the case can not be, in any way, affected by the taking of the affidavit from the office of the justice. The jurisdiction does not terminate with the absence of the papers from the court with or without leave. Nor does it matter that the justice had not copied the affidavit on the docket and made no record of the affidavit. While the statute requires him to make entries in his docket, it has been held to be directory merely, and the omission in this respect is not a jurisdictional defect. *Indianapolis, etc., R. R. Co.* v. *Wilsey*, 20 Ind. 229.

Especially should this be true when the officer seeks to take advantage of his own neglect of duty. The same reason applies to his failure to issue a warrant, if this act were in any sense material. He could not ask the court to enforce a contract which would only be valid because of his failure to discharge his duty as a justice. But the issuance of a warrant by him was not material.

The pleadings show that Schreiber was a fugitive from justice, and that appellant's agreement was to go to Detroit, Mich., and arrest and deliver the accused there or at any place appellee might select.

If the undertaking was, as counsel insist, to do a lawful act, the warrant in such case would be issued at the end of a requisition. If the warrant were issued without the State, it would be without avail. But aside from all this, the question is not, had the justice jurisdiction, in fact—not what should have been decided had the prisoner been brought before him; but might the temptation of a possible fee of twenty-five per cent. influence a justice's judgment in such an event—he having placed himself in a position where such a contingency could occur. If so the contract is void.

The purpose of the rule is to prevent persons from assuming a position where selfish motives may impel a wrongful act.

The judgment is affirmed.

