EISENSTEIN v. MAIDEN LANE SAFE DEPOSIT CO.

(Supreme Court, Appellate Term.    January 7, 1909.)

CONTRACTS (§ 131*)—LEGALITY OF OBJECT—INFLUENCING ADMINISTRATIVE OFFICER.

Plaintiff's assignor was employed by defendant to build vaults for it, and defendant agreed to procure the necessary licenses and permits for the work. When the work was partially completed, it became necessary to procure a permit from the board of aldermen for the construction of a railing, which was not within the permit as originally granted, and plaintiff's assignor, at the request of defendant's secretary, who was managing the work, hired a lawyer to draft a proposed resolution of the board of aldermen giving defendant permission to erect the railing, and the secretary agreed to pay the expenses incident to the preparation and passing of the resolution. After the permit had been granted through the efforts of the lawyer employed, defendant took advantage of it and put up its railing, but refused to reimburse plaintiff's assignor for the fee paid the lawyer. There was no evidence that the lawyer in any way used improper methods to obtain the permit, and the permit itself was proper and necessary in the interest of the general public. *Held*, that defendant was liable for the fee paid the lawyer by plaintiff's assignor.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 594–607; Dec. Dig. § 131.*]

MacLean, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, Eighth District.

Action by William Eisenstein against the Maiden Lane Safe Deposit Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Argued before GILDERSLEEVE, P. J., and MacLEAN and SEABURY, JJ.

Nathan Bijur, for appellant.
Morton Stein, for respondent.

GILDERSLEEVE, P. J. Defendant is a corporation carrying on a safe deposit business. It was installing vaults at Maiden Lane and Broadway, and had a contract with plaintiff's assignor, who was to do the work. This contract provided, among other things, that defendant, or its architects, should procure the necessary licenses and permits. The purpose of certain alterations to be done in the work was to enable defendant to give to its depositors direct access from Broadway down a flight of steps to its main offices. That part of the work had been completed, but there was no railing along Broadway to protect the public from falling into the wellhole caused by the construction of the stairs. The police then interfered and prohibited the continuance of the work and the use of the staircase. There was only one way out of the difficulty, which was to procure a permit from the board of aldermen for the construction of the railing, which was not within the original permit. The defendant's secretary was managing for defendant the work in question, and, at his request,

plaintiff's assignor hired a lawyer "to procure a draft of a proposed resolution of the board of aldermen, giving defendant permission to erect an iron railing within the stoop lines at the head of the stair-. case leading to the basement of 170 Broadway, as a safeguard for persons traveling the street at that point."

Relying on the authority of defendant's secretary and manager and upon his promise that defendant would pay the expenses, plaintiff's assignor so hired a lawyer, requesting him "to examine the law with respect to such matter, and to present the resolution to the board of aldermen, and to see various aldermen and explain to them the reasons and necessity for favorable action on said resolution, and to explain its purport to the mayor so that it would meet with his approval." These services the lawyer successfully performed and charged therefor $300. Defendant took full advantage of the permit and resolution and put up its railing, but refused to reimburse plaintiff's assignor for the fee of the said lawyer. There is no evidence, nor any insinuation, that the lawyer in any way or manner used improper methods to obtain the permit, while the permit itself was proper and necessary in the interests of the general public.

The judgment is right, and should be affirmed, with costs.

Judgment affirmed, with costs.

SEABURY, J., concurs.

MacLEAN, J. (dissenting). The judgment herein should be reversed. The case is barren of evidence of an express employment of the plaintiff's assignor by the defendant to render the services, reimbursement for which the plaintiff herein makes claim, and which were rendered, not by the plaintiff's assignor, but by his lawyer and by his request. To procure the passage of a resolution by the board of aldermen and approval by the mayor, giving to the defendant permission to erect an iron railing within the stoop lines at the head of a stairway leading to the basement of 170 Broadway, it appears that plaintiff's assignor consulted and employed his own lawyer without express or even implied authorization by the then secretary of the defendant, which for all the work to be done there, to the amount of $3,000, excepting extra work, it had by its president entered into a contract with plaintiff's assignor, the secretary merely attesting, and after such consultation when, as the assignor testified, he could not see the secretary, he took a chance and employed his own lawyer.

Even if the fruits of such services be regarded as thereafter adopted or ratified by the defendant by the acceptance of the work performed under the protection of the permission that was obtained, it appears that the agreement between the plaintiff's assignor and his lawyer was tainted, and so unenforceable against them, as also between plaintiff's assignor and the defendant herein, because the assignor testified that the fee of $300 was contingent upon his lawyer's procuring the passage of the resolution. "It is not necessary to adjudge that the parties stipulated for corrupt action, or that they intended that secret and improper resorts should be had. It is enough that the contract tends directly to those results." Mills v. Mills, 40 N. Y. 543, 546,

100 Am. Dec. 535. "While contracts for the payment of fixed fees for professional services are valid, yet, when the fees are made contingent upon success in obtaining the desired legislation, * * * the contract becomes so tainted with illegality as to render it void." Elkhart County Lodge v. Crary, 98 Ind. 238, 244, 49 Am. Rep. 746. "Agreements for compensation contingent upon success suggest the use of sinister and corrupt means for the accomplishment of the end desired. The law meets the suggestion of evil and strikes down the contract from its inception." Tool Co. v. Norris, 2 Wall. 45, 55, 17 L. Ed. 868.