## SELLARS v. LAMB.

1. CONTRACTS—PUBLIC OFFICERS—PUBLIC POLICY.
> A contract made by a public officer is against public policy and void, if it interferes with the unbiased discharge of his duty to the public in the exercise of his office, or if it places him in a position inconsistent with his duty to the public, or even if it has a tendency to induce him to violate such duty; the question of validity not being dependent on whether it can be shown that the public has actually suffered any detriment or loss.

Illegality of contract assigning future compensation of public official, see 2 Restatement, Contracts, § 547.

2. OFFICERS—ANTICIPATORY   ASSIGNMENTS   OF   SALARY—PUBLIC
   POLICY.
   A public official must be paid his official salary notwithstanding
   he may have made an anticipatory assignment thereof as
   such assignments are void on ground of public policy.

3. SAME—CONTRACTS RESTRICTING DISCRETION.
   Any contract by one acting in a public capacity which restricts
   the free exercise of a discretion vested in him for the public
   good is void.

4. RECEIVERS — OFFICERS — ATTORNEYS — CONTRACTS — DISCRE-
   TION—PERSONAL INTEREST.
   A receiver of a national bank, as an officer of the court whose
   trust relationship runs only to creditors instead of the
   general public, is an officer who may not make a valid con-
   tract which restricts or tends to restrict his discretion, such
   as becoming an assignee under assignment of sum payable to
   attorney for receiver for services rendered for receiver, where
   it appears the receiver made a recommendation to the comp-
   troller of currency as to the choice of person to act as at-
   torney and then as to value of the attorney's services, such
   an assignment being void by reason of public policy since
   the receiver had a personal interest in having the attorney's
   account allowed.

Appeal from Berrien; Evans (Fremont), J. Sub-
mitted October 14, 1942. (Docket No. 104, Calendar
No. 42,175.) Decided December 23, 1942.

Garnishment proceedings by Edith Hatosky
Sellars against Ross H. Lamb, principal defendant,
and W. R. Payne, as receiver of Commercial Na-
tional Bank and Trust Company of St. Joseph,
Michigan, and American National Bank and Trust
Company of Benton Harbor, Michigan, garnishee
defendant. Judgment for defendants. Plaintiff
appeals. Reversed and remanded for entry of judg-
ment.

*Myron H. Wolcott,* for plaintiff.

SHARPE, J. Plaintiff, Edith Hatosky Sellars, having judgment against defendant Ross H. Lamb, her former employer, for $6,925.32 for services rendered, garnisheed W. R. Payne in his capacity as receiver of the Commercial National Bank & Trust Company, of St. Joseph, and of the American National Bank & Trust Company of Benton Harbor, Michigan. This is an appeal from judgment in favor of the garnishee defendant.

The material facts are not in dispute. It appears that defendant Lamb had been appointed attorney for the receiver of the Commercial National Bank & Trust Company by the comptroller of the currency of the United States and had also rendered some legal services for W. R. Payne as receiver of other National bank trusts in receivership. On or about July 2, 1941, attorney Lamb assigned to Payne and wife a $7,000 interest in money due him as attorney for the receiver of the above banks. At the time the above assignment was made, defendant Lamb was indebted to Payne and wife in the amount of $5,591.03 evidenced by a promissory note due and payable on November 2, 1941. The assignment was delivered to Payne in the early part of September, 1941. Payne as receiver accepted the assignment, but did not inform the comptroller of the currency that such an assignment had been made. Nor did he inform the comptroller of the currency that a garnishment suit was filed against him as receiver on April 23, 1942, which suit was filed to reach funds then held by Payne as receiver that were due defendant Lamb as attorney for the receiver. The receiver disregarded the writ of garnishment, and signed and delivered the check for the Commercial National Bank & Trust Company fees in the amount of $3,981.77 to attorney Lamb, whereupon Lamb indorsed the check and returned it to Payne.

The cause came on for trial and the trial court found:

"The established practice in employment of an attorney and in allowance and payment of attorney fees and expenses in such receiverships is this:

"The attorney is usually first recommended to the comptroller by the receiver. If approved by the comptroller, the attorney then signs an agreement with the comptroller, whereby the determination of the comptroller as to the reasonableness of any fee charged is agreed to be absolute and final.

"The attorney prepares an itemized bill with considerable detail. He presents it to the receiver, who checks it and forwards it, together with his recommendations, to the comptroller of the currency for consideration and allowance in whole or in part, as the comptroller's office finally determines.

"The receiver's recommendation may be for disallowance of certain items or amounts and allowance of others, or for allowance in full as presented. That final decision and determination as to allowance or disallowance rests with the comptroller is clearly evidenced by the fact that on April 25, 1942, two days after garnishment served, the comptroller advised the receiver that a deduction of $225 had been made in Mr. Lamb's bill involving the American National trust."

The court held that the assignment was valid and granted a motion to dismiss the writ of garnishment, saying:

"In view of the complete detail possessed by the comptroller with respect to every single asset item in any national bank receivership, thus enabling him to intelligently render final judgment upon the reasonableness of bills presented, I am of opinion that the preliminary duty of the receiver to recommend does not so affect public welfare as to render the assignment void."

Plaintiff appeals and contends that a public officer cannot enter into, or be bound by, any contract which might induce him to neglect the interests which he is employed to protect; that the receiver is such a public officer; and that the assignment is void *ab initio*.

The paramount question involved in this case may be stated as follows: Does the fact that a receiver must make recommendations for payment of a bill, the proceeds of which have been assigned to him as an individual without the knowledge of the comptroller of the currency, make the assignment void as being contrary to public policy?

The general rule of contracts made by public officers is well stated in 22 R. C. L. p. 460:

"A contract made by a public officer is against public policy and void, if it interferes with the unbiased discharge of his duty to the public in the exercise of his office, or if it places him in a position inconsistent with his duty to the public, or even if it has a tendency to induce him to violate such duty; and the question of the validity of such a contract does not depend on the circumstances whether it can be shown that the public has actually suffered any detriment or loss."

We have had occasion to express our opinion upon the subject of public policy as it relates to public officers making agreements to assign or divide their salary.

In *Granger* v. *French,* 152 Mich. 356 (125 Am. St. Rep. 416), a justice of the peace assigned unearned salary. We there said:

"The rule of public policy makes all anticipatory assignments of salary by the relator void, and demands that he be paid his official salary notwithstanding such assignments."

In *Anderson* v. *Branstrom,* 173 Mich. 157 (43 L. R. A. [N. S.] 422, Ann. Cas. 1914 D, 817), two lawyers entered into an agreement whereby one of them was to conduct the business of the partnership in Muskegon, while the other was to conduct the business of the partnership in Fremont. The agreement also included a division of the salary of one of the partners who was the prosecuting attorney. In an action for an accounting which would include the salary of the prosecuting attorney, we said:

"The test of the validity of such an agreement is not, I think, whether, if it was faithfully carried out, the public would be harmed, but its validity must be measured by its tendency.  *  *  *  But assignments of unearned emoluments of public office are not favored and courts have, pretty uniformly, refused to enforce them."

See, also, *Benson* v. *Bawden,* 149 Mich. 584 (13 L. R. A. [N. S.] 721) ; *Skutt* v. *City of Grand Rapids,* 275 Mich. 258.

In *Brown* v. *First National Bank of Columbus,* 137 Ind. 655 (37 N. E. 158, 24 L. R. A. 206), a bank employee absconded after embezzling some of the bank's money. A justice of the peace made a contract with the bank that if he succeeded in getting the former employee arrested and recovered any of the money, he was to get 25 per cent. of all he recovered. In an action to recover on this contract, the court said:

"An agreement of this character shocks the moral sense of the people as being grossly wrong and injurious. In Greenhood, Public Policy, p. 337, it is said: 'Any contract by one acting in a public capacity, which restricts the free exercise of a discretion vested in him for the public good, is void.'  *  *  *

"Elliott, J., speaking for the court in *Stropes* v. *Greene County Board of Commissioners,* 72 Ind. 42,

\* \* \* said: \* \* \* 'Officers ought not to be permitted to place themselves in a position, in which personal interest may come into conflict with the duty which they owe to the public.'

"In *Elkhart County Lodge* v. *Crary,* 98 Ind. 238, 241 (49 Am. Rep. 746), the court say 'that contracts which may tend to the injury of the public service are void,' and contracts which will tend to subordinate the public welfare to individual gain are not enforceable in any court of justice. \* \* \* And this is true regardless of the good faith or intent of the parties at the time the contract was entered into, or the fact that no evil resulted by or through the contract."

We do not find it necessary to determine that a receiver is an officer of the United States to bring him within the general rule of public policy. He comes within the rule if he was merely an officer of the court whose trust relationship runs only to the creditors instead of the general public. In *Fischer* v. *Liberty National Bank & Trust Company* (C. C. A.), 61 Fed. (2d) 757, one of three receivers assigned his future fees as receiver to the defendant bank. It was there held that the assignment was void by reason of public policy.

In the case at bar the recommendation of the receiver as to the value of services rendered by the attorney was generally relied upon by the comptroller. The receiver had a personal interest in having the account allowed by the comptroller. It follows that there would naturally be a tendency on the part of the receiver to approve of the attorney's account as submitted for services rendered. This tendency might impair the unbiased judgment and efficient service that is expected of a receiver of a national bank. Under such a relationship there could be a conflict between his personal interests and

his official duties and for the reasons above stated we must hold that the assignment of money due attorney Lamb as attorney for the receiver to Payne is void, by reason of public policy. Our conclusion that the assignment is void is based entirely upon the theory that the receiver of the bank had no right to have an interest in or be a party to any such an agreement.

The judgment of the trial court in granting the motion for dismissal of the garnishment suit is reversed and the cause remanded to the trial court for entry of judgment in favor of plaintiff. Plaintiff may recover costs.

CHANDLER, C. J., and BOYLES, NORTH, STARR, WIEST, BUTZEL, and BUSHNELL, JJ., concurred.