THE ATTORNEY GENERAL
OF TEXAS
ATTORNEY GENERAL



February 17, 1969

Honorable W. S. Heatly                    Opinion No. M-340
Chairman, Appropriations Committee
Texas House of Representatives            Re: Whether the facts sub-
State Capitol Building                        mitted constitute con-
Austin, Texas  78711                          flict of interest by
                                              members of Boards of
                                              Trustees of community
                                              centers who are interested
                                              in entities furnishing
                                              supplies or services
Dear Mr. Heatly:                              to such centers.

        Your request for an opinion reads as follows:

        "Section 3.01 (a), chapter 67, Acts 59th
Legislature, Regular Session, 1965, authorized
the establishment of community centers in this
State as follows:

        'One or more cities, counties, hospital
districts, school districts, rehabilitation
districts, state-supported institutions of
higher education, and state-supported medical
schools, or any combination of these, may co-
operate, negotiate, and contract with each
other through their governing bodies to es-
tablish and operate a community center.'

        "Sections 3.02 and 3.03 of the same Act
prescribe the procedures by which boards of
trustees for community centers established
under the Act may be appointed.

        "Section 3.12 of the Act authorizes the
board of trustees of a community center to make
rules to regulate the mental health and mental
retardation services provided by the community
centers and authorizes such boards of trustees
to contract with local agencies and with quali-
fied persons and organizations to provide a
portion of these services.

- 1675 -

"A recent investigation of several community centers which have received grant-in-aid from the Texas Department of Mental Health and Mental Retardation as authorized by Section 4.01 through Section 4.05 of the Act in question indicates the possibility of a conflict of interest with some members of these boards because of their connection with local agencies or organizations which have contracted to provide a portion of the community center's program of services.

"Wherefore, your advice and opinion is respectfully requested as to the existence of a conflict of interest as that term is construed and applied under the law of this State to the following situations:

"1.  A duly appointed member of the board of trustees of a community center is a member of the board of directors and a stockholder of a private corporation which has contracted to provide a portion of the services of the community center and to be paid therefor by the center.

"2.  A duly appointed member of a board of trustees of a community center is an employee of a private hospital which has contracted to provide a portion of the services of the community center and to be paid therefor by the center.

"3.  A duly appointed member of the board of trustees of a community center is a physician to whom such center refers patients for treatment. The physician is paid by the center for services rendered.

"In addition to the above, your advice and opinion is respectfully requested as to whether a conflict of interests exists as that term is construed and applied under the laws of this State to the following situations:

"1.  A duly appointed member of a board of trustees of a community center is a vice president of a local bank in which the community center's funds are deposited.

"2. A duly appointed member of a board of trustees of a community center is an employee of a facility under the control and management of the Texas Department of Mental Health and Mental Retardation which Department has made a grant-in-aid to the community center."

In Meyers v. Walker, 276 S.W. 305 (Tex.Civ.App. 1925) the court stated:

". . .If a public official directly or indirectly has a pecuniary interest in a contract, no matter how honest he may be, and although he may not be influenced by the interest, such a contract so made is violative of the spirit and letter of our law, and is against public policy.

"Authorities: Texas Anchor Fence Co. v. City of San Antonio, 30 Tex.Civ.App. 561, 71 S.W. 301; Knippa v. Stewart Iron Works (Tex.Civ.App.) 66 S.W. 322; 19 R.C.L. 8 196, pp. 739, 897; Ferle v. City of Lansing, 189 Mich. 501, 155 N.W. 591, L.R.A. 1917C, 1096; Robinson v. Patterson, 71 Mich. 141, 39 N.W. 24; Meguire v. Corwine, 101 U.S. 108, 25 L.Ed. 899; Rigby v. State, 27 Tex.App. 55, 10 S.W. 760; Brown v. Bank, 137 Ind. 655, 37 N.E. 158, 24 L.R.A. 206; 28 Cyc. 650; Graves & Houtchens v. Diamond Hill Independent School District (Tex. Civ.App.) 243 S.W. 638.

"Mr. Story on Contracts, 8 546, says the expression 'public policy' has never been defined by the courts but has been left loose and free of definition in the same manner as fraud. This rule may, however, be safely laid down, that whenever any contract conflicts with the morals of the time and contravenes any established interest of society, it is void as being against public policy."

This same rule is announced in City of Edinburg v. Ellis, 59 S.W.2d 99 (Tex.Comm.App. 1933). Likewise the rule is stated in Dillon on Municipal Corporations, 5th Edition, Vol. 2, pages 1140, 1143 to 1145, and 1146 to 1147, as follows:

"It is a well-established and salutary doctrine that he who is intrusted with the business of others cannot be allowed to make such business an object of pecuniary profit to himself. This rule does not depend on reasoning technical in its character, and is not local in its application. It is based upon principles of reason, of morality, and of public policy. It has its foundation in the very constitution of our nature, for it has authoritatively been declared that a man cannot serve two masters, and is recognized and enforced wherever a well-regulated system of jurisprudence prevails. . . .

"At common law and generally under statutory enactment, it is now established beyond question that a contract made by an officer of a municipality with himself, or in which he is interested, is contrary to public policy and tainted with illegality; and this rule applies whether such officer acts alone on behalf of the municipality, or as a member of a board or council. Neither the fact that a majority of the votes of a council or board in favor of the contract are cast by disinterested officers, nor the fact that the officer interested did not participate in the proceedings, necessarily relieves the contract from its vice. The fact that the interest of the offending officer in the invalid contract is indirect and is very small is immaterial. . . .

"   .   .   ."

In Attorney General Opinion No. WW-1362 (1962), the above principles were recognized and applied in ruling that a member of a district school board, a consignee of a gasoline contract let by the board, had a conflicting interest which rendered the contract void and against public policy.

Applying the foregoing principles of law to the facts stated in your request, it is our opinion that a member of the Board of Trustees of a community center and who is also a member of a Board of Directors and a stockholder of a private corporation, would have a conflicting interest in a contract with such private corporation for services rendered to the community center and paid therefor by the center. Such interest is contrary to public

policy of this state.

Likewise, a physician to whom patients of a center are referred for treatment and who is paid by the center for the professional services rendered to the patient has an interest in the contract between the center and the physician and such contract would be contrary to public policy.

On the other hand, mere salaried employees of various facilities would have no interest in a contract between the facility and the center in the absence of evidence that their compensation was dependent in any way upon the making of the contract; and such contracts would not be contrary to public policy. 63 C.J.S. 558, Mun.Corps., Sec. 991b, and cases cited; and see City of Coral Gables v. Weschler, 164 So.2d 260, 263 (Fla. 1964).

The public policy of this state with regard to the selection and qualification of depositories for the deposit of public funds of all agencies and political subdivisions of the state is defined by the legislature in Article 2529c, Vernon's Civil Statutes. Section 2 thereof provides:

"The fact that an employee or officer of a state agency or political subdivision, who is not charged with the duty of selecting the depository thereof, is an officer, director or stockholder of a bank shall not disqualify said bank from serving as the depository of said state agency or subdivision.

"A bank shall not be disqualified from bidding and becoming the depository for any agency or political subdivision of the state by reason of having one or more officers, directors or stockholders of said bank who individually or collectively own or have a beneficial interest in not more than 10 percent of the bank's outstanding capital stock, and at the same time serves as a member of the board, commission, or other body charged by law with the duty of selecting the depository of such state agency or political subdivision; provided, however, that said bank must be selected as the depository by a majority vote of the members of the board, commission, or other body of such agency or political subdivision and no member thereof who

is an officer, director or stockholder of the bank shall vote or participate in the proceedings. Common-law rules in conflict with the terms and provisions of this Act are hereby modified as herein provided, but this Act shall never be deemed to alter, change, amend or supersede the provisions of any home-rule city charter which is in conflict herewith." (Emphasis added.)

Therefore, it is not against public policy of this state for a member of a Board of Trustees of a community center to be an officer in a bank in which the center's funds are deposited, provided of course that such board member does not participate in the selection of said depository by the Board of Trustees, as provided in Article 2529c. In accord, Attorney General's Opinion No. M-331 (1969), in which it was held that an independent school district may borrow money from its school depository if a member of its school board is an officer, stockholder, director or employee in the depository bank, provided the school district has adopted Article 2832c and complied with the requirements set out in Section 4 thereof.

## S U M M A R Y

It is contrary to public policy of this State for a member of a Board of Trustees of a community center to be a member of a Board of Trustees and a stockholder of corporations contracting with the community center. However, mere employees of the facilities do not have such a conflict of interest in a contract between the facility and the center. It is contrary to public policy for a physician, a member of a Board of Trustees of a community center to receive compensation for patient referral from the center. It is not contrary to public policy of this State for a board member to be an officer of a bank in which funds of the center are deposited if the board member does not participate in the selection of said depository bank.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by John Reeves
**Assistant Attorney General**

**APPROVED:**
OPINION COMMITTEE

**Kerns Taylor, Chairman**
**George Kelton, Vice-Chairman**
Roy W. Mouer
Fielding Early
Ben Harrison
John Banks

**W. V. GEPPERT**
Staff Legal Assistant