## Case No. 4,182.

### DUPAS v. WASSELL.

[1 Dill. 213.][1]

Circuit Court, E. D. Arkansas. 1870.

S. R. Harrington, for plaintiff.
C. B. Moore, for defendant.

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

Before DILLON, Circuit Judge, and CALDWELL, District Judge.

CALDWELL, District Judge. By consent of parties this cause was tried before the court.

The action is brought to recover for the use and occupation of a parcel of ground, comprising part of what is known as the "Hot Springs Reservation." It is not any part of the quarter section of that reservation to which parties have for many years been asserting title by pre-emption, and a New Madrid location.

The plaintiff's own evidence discloses the fact that he has no title, legal or equitable, to the parcel of ground in question, and no pretense of right or claim other than a mere "squatter" on the reservation.

The act of congress [of 1832] reserving this land from sale (4 Stat. 505), is in these words: "That the Hot Springs in said territory, together with four sections of land including said springs, as near the centre thereof as may be, shall be reserved for the future disposal of the United States, and shall not be entered, located, or appropriated for any other purpose whatever."

The plaintiff "squatted" on this reservation subsequent to the passage of this act. In 1866 the plaintiff assumed to grant a ground lease of part of this reservation to one McGraw, reserving rent at the rate of three hundred dollars per year. The lease was verbal, and McGraw entered upon the land under it, and erected a hotel building. Subsequently the improvements put upon the land by McGraw were sold at execution sale and purchased by the defendant, who entered and occupied the improvements under his purchase at the execution sale.

No rule is better settled than that a tenant shall not during his possession of premises, be permitted to dispute the title of the landlord under whom he entered. And this rule extends to an under tenant, or assignee, or other person claiming under the lessee, and is applicable to every species of tenancy, whether for years, at will, or by sufferance. And one who purchases a tenant's right at execution sale is bound by this rule, and is liable for the rent reserved in the same manner as the original tenant.

The plaintiff insists that, applying these rules of law to the facts in this case, he is entitled to judgment. Every agreement that parties may make does not, in law, amount to a contract having a binding obligation. Contracts to do an illegal act, and contracts against good morals and public policy are void; and the law will not lend its aid to either party to such a contract to compel its performance or enforce any right claimed under it. Leases are not exempt from the operation of this rule. A lease of premises for the purpose of prostitution or for any other immoral object, is a contract against good morals, and absolutely void. Tayl. Landl.

& Ten. § 511. And the same is true of leases that contemplate the doing of an act in violation of law and the settled public policy of the country. The lease in this cause falls within this last category. The reservation was not public lands in the ordinary and common acceptation of these words. These lands could not be entered, located, or appropriated for any purpose whatever. This was the law when the plaintiff "squatted" on them. He was a trespasser, and might have been criminally punished for his trespass. He had no right, and could acquire no right to treat this government property as his own; and in attempting to do so, he was acting in violation of law; and any lease he may have granted to any portion of the reservation was utterly void.

We have not overlooked the cases of Pelham v. Wilson, 4 Ark. 289; Cain v. Leslie, 15 Ark. 312; Hughes v. Sloan, 8 Ark. 146; McFarland v. Mathis, 10 Ark. 560,—and other cases of that class, where it is held that parties making improvements on the public lands have title to them which the law will recognize and protect against all the world, but the United States; and which they may sell, and a sale of which constitutes a good consideration.

It is not necessary in this case to pass upon the soundness of the rulings in these cases. There are decisions to the contrary. Carr v. Allison, 5 Blackf. 63. And see Turley v. Tucker, 6 Mo. 584, and Hatfield v. Wallace, 7 Mo. 112. In the last case cited, one Eiler, who was entitled to a right of pre-emption to a quarter section of land, under the act of congress of June 1, 1840 [5 Stat. 382], leased the same to the plaintiff for ninety-nine years. The act of congress under which Eiler was entitled to pre-empt the land, declared that all transfers of such right made before the issuance of the patents should be void. Judge Scott, in delivering the opinion of the court, said: "I have no doubt about the invalidity of the lease. So bold a contrivance to evade the law ought not to be countenanced, and to enter into an argument to show its invalidity, would be treating it with a dignity of which it is altogether unworthy."

The act of congress of March 3, 1807 (2 Stat. 445), prohibits persons from taking possession of, or making settlement on, any of the public lands, or "causing such lands to be thus occupied, taken possession of, or settled," and declares that "such offender shall forfeit all his right, title, and claim, if any he hath, of whatsoever nature, or kind, the same shall or may be, to the lands which he may have taken possession of or settled or caused to be occupied."

The language of this act is quite as strong as that of 1840, on which the judgment of the court was based in Hatfield v. Wallace, supra. The lease the plaintiff assumed to make to McGraw is in the very teeth of this act. The sole object of the lease was to induce the lessee to take possession of, and to occupy this government land, and to pay the plaintiff, who was himself a trespasser, and on the land in violation of law, a ground rent on account of such possession and occupancy.

The rulings in the cases relied on by the plaintiff, go upon the ground that it was the policy of the government to encourage settlement and improvements on the public lands; and in these cases the lands on which the improvements had been made were public lands, that is, lands subject to pre-emption, entry, or purchase. But it is not so in this case. By the act of 1832, this land was segregated from the public domain, and after that time was no more public land in the usual sense of these words, than are the arsenal grounds in this city, or the Fort Smith military reservation.

And in this case there was no lease or sale of improvements—it was a ground lease of the unimproved lands of the government, reserving a ground rent. To uphold such a transaction would be to invite trespassers on the public lands; and encourage and reward fraud and violence. It would be offering a premium to those who were daring and reckless enough to assume the attitude of landlord over the government lands.

One who assumes dominion over public lands expressly reserved from settlement and sale, as this land was, and invites others to trespass thereon, by presuming to grant them ground leases thereof, stands in a different attitude from a bona fide settler on public lands, subject to pre-emption or entry, and whose settlement and improvements are made with a view and expectation of pre-empting or entering the same.

The plaintiff is not within the reason or equity of the cases referred to, and the lease he assumed to make was utterly void, and cannot be the foundation of an action in any court.

Judgment for the defendants.