## SHORMAN V. EAKIN.

1. VENDOR AND VENDEE: *Estoppel as to title; Public lands.*

As a general rule a purchaser receiving possession under his contract, cannot deny his vendor's title so long as he remains in possession ; but where it turns out that the land was public land of the United States, the purchaser is not

estopped to deny the title and refuse payment, though he has perfected his title by entering the land as a homestead under the laws of the United States.

2.   ESTOPPEL :   *Acts against public policy.*

No one can estop himself from taking advantage of that which is contrary to public policy.

3.   LIEN :   *For debt on homestead.*

No lien can be fixed upon land entered under the homestead act of the United States, for any debt contracted before the issuance of the patent for the land.

APPEAL from *Hempstead* Circuit Court in Chancery.
Hon. C. E. MITCHEL, Circuit Judge.

*Smoote, McRae & Hinton* for Appellant.

Appellant, in the absence of fraud, cannot contest the title nor resist the payment of the purchase money, until he surrenders the possession obtained under the sale by Burke to him.   *27 Ark., 61; 38 Id., 200; Hempst., 503; 40 Ark., 420; 23 Id., 590; 24 Id., 456.*

The homestead entry cannot change the result.   Appellee cannot set up the defense, under Section 2296, Revised Statutes of the United States, that it is against public policy.

This is a proceeding to foreclose for the purchase money in which *the title is not involved.*   The statute was not meant to apply to equitable proceedings to foreclose for purchase money.

*A. B. & R. B. Williams* for Appellee.

The pretended sale was a fraud.   Burke had *no* title, nothing to convey, and the sale was void.   *38 Ark., 127.*   This is an *executory* contract.   See distinction in *21 Ark., 235.*

Under the laws of the United States Eakin *could not* procure a title which could inure to the benefit of any one but himself.   See the oath.   *U. S. Dig., sec. 2290.*

The cases in *Hempst.*, *503*, not in point. The possession of land under a void sale is no consideration. *38 Ark.*, *127*, citing *21 Ark.*, *235*.

A covenant to make a "good and perfect deed" is not complied with by making one good *in form only*. The title must be *good*. *13 Sm. & M. (Miss.)*, *275; 5 Seed. (N. Y.)*, *535*.

Battle, J. On the first day of March, 1878, Fleming Burke was in possession of the land in question, and sold it to John M. Eakin, on a credit, for the sum of $666.66. Eakin executed his note to Burke for the purchase money, and Burke his bond to Eakin, thereby covenanting to convey the land in fee simple to Eakin when the note was paid, and put Eakin in possession. At this time Burke claimed the land through one John Skidmore and others, upon a swamp land grant from the State of Arkansas, and at the same time the land, according to the books of the United States Land Office, at Camden, Ark., was vacant, and subject to homestead entry under the laws of the United States. On the 22d day of December, 1879, Eakin entered it under an Act of Congress, entitled, "An Act to secure homesteads to actual settlers on the public domain," approved May 20, 1862, at the land office at Camden, and paid the receiver $10.05 and took his receipt. Eakin has remained in possession of the land at all times since the 1st day of March, 1879. The note for the purchase money was assigned to the appellant, Robert R. Shorman, some time after it was due. No part of it has ever been paid.

On the 24th day of November, 1881, Shorman commenced this action, in the Hempstead circuit court, on the note and bond, to foreclose a vendor's lien, claimed by him on the land sold to Eakin, and on the 10th day of October, 1883, the action was finally heard. The court held that Shorman had no lien on the land; that the note was without consideration, and dis missed the complaint, and Shorman appealed.

22——47

Shorman v. Eakin.

There is no evidence that the land in question was swamp land on the 28th day of September, 1850, or was confirmed to the state. The national government being the original source of title to lands in this state, the presumption of law is that the title remained with the government until some other disposition of it is shown. The only disposition shown to have been made by the government, of the land in question, is the homestead entry. This being true, the presumption is Burke never had any title to the land. *Patterson v. Tatum, 3 Sawyer, 172.*

1. VENDOR AND VENDEE:— Estoppel as to title. Public lands.

As a general rule, a purchaser, entering into possession under his contract of purchase, cannot, in an action like this, so long as he retains such possession, deny his vendor's title. If the vendor is unable to convey the title, and he would rescind the contract ,he must restore the possession. He cannot enjoy the property and refuse to pay the price. The principle on which this rule rests is, the purchaser is estopped to deny the title of his vendor, because he acknowledged it and gained possession by his purchase, and he ought not, in conscience, as between them, to be allowed to enjoy the fruits of his contract and not pay the full consideration money. *Lewis v. Boskins, 27 Ark., 64; Galloway v. Failey, 12 Peters, 294; Jackson v. Ayers, 14 John., 223; Jackson v. McGinness, 14 Penn. St., 333; McIndoe v. Morman, 26 Wis., 589.*

2. ESTOPPEL: Public policy.

But this rule is not without exception. No one, as a rule, can estop himself from taking advantage of that which is contrary to public policy. Contracts, as a general rule, cannot vest in parties any rights in contravention of law or public policy. Mr. Parsons, in his work on contracts, says: "It is obvious, however, that the doctrine of estoppel can go no further than to preclude a party from denying that he has done that which he had power to do." *2 Parsons Contracts, 5 ed., 799; 1 Greenhood on Public Policy, 115; Spare v. Home Mut. Ins. Co., 15 Fed. Rep., 707; Steadman v. Duhamel, 1 Manning,*

*Granger & Scott, 888; Dupas v. Wassell, 1 Dill., 213; Klenk v. Knobel, 37 Ark., 304; Webb v. Davis, Id., 555.*

The Constitution of 1868 prohibited the encumbering of homesteads of residents, of this state, who are married men or heads of families, in any manner, while owned by them, except for taxes, laborers' or mechanics' liens and securities for the purchase money. In *Klenk v. Knobel* and *Webb v. Davis, supra,* the defendants, while the Constitution of 1868 was in force, executed mortgages and recited or covenanted therein that the property mortgaged was not their homesteads. This court held in both cases, which were actions to foreclose mortgages, that the mortgagor was not estopped from denying the truth of these recitals and covenants, and claiming the property as his homestead, because such recitals and covenants were contrary to public policy and void.

As a rule, a tenant cannot dispute the title of his landlord. Yet in *Dupas v. Wassell, supra,* it was held that a landlord could not recover against his lessee ground rent for the use of the lands leased, because the lease was void by reason of its being contrary to the Statutes of the United States and against public policy, and that the lessee was not estopped to deny his landlord's title.

The object of the act, under which Eakin entered the land in question, is to secure the settlement of the public domain. To accomplish this object the government offers its lands to the actual settler, in quantities not exceeding a quarter section, for a nominal consideration, on the condition that he resides upon or cultivates the land entered by him, for the term of five years, immediately succeeding the filing of the affidavit he is required to make at the time he applies to enter. In order to prevent the homestead settler defeating the object of the act, he is required to make affidavit, upon applying and before he is permitted to enter, that his application to enter is made for his *exclusive* use and benefit, and that his entry is made

Shorman v. Eakin.

for the purpose of actual settlement and cultivation, and not, either *directly or indirectly*, for the use or benefit of any other person; and, after the expiration of the five years, to prove by two credible witnesses that he has resided upon or cultivated the land entered by him, for the term of five years *immediately* succeeding the time of filing the affidavit, and make affidavit that no part of such land has been alienated. This mode of procedure was, manifestly, adopted for the purpose of preventing any one, except the homestead settler, receiving the benefit of the land entered, directly or indirectly. As a further inducement to accept the terms of this act and to accomplish its object, the government guarantees to the homestead settler that his land, entered under the act, shall not be taken from him for debt. For this purpose the act expressly provides that the land acquired under it shall not " in any event become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor." *Revised Statutes of the United States, secs. 2290, 2291, 2296, 2297.*

3. LIEN: For debt on homestead.

It was held by this court, in *Cox v. Donnelly, 34 Ark., 762,* that an agreement for the sale and conveyance of land, entered under this act, made by the person entering, before he has perfected his right to a patent for the same, is in violation of the act, against public policy and void; and in *Sorrels v. Self, 43 Ark., 451,* that a homestead, acquired under it, is not " liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor." As a logical sequence to these decisions it necessarily follows, no lien on the land entered under the homestead, to secure a debt contracted before the patent therefor is issued, can in any manner be acquired.

In *McCue v. Smith, 9 Minn., 252,* "the defendant, Ann Smith, made a settlement and claim under the act of congress of September 4, 1841, known as the pre-emption law. Prior to proving up the claim and purchasing the premises, the plaintiff loaned the defendant a sum of money to pay the purchase

Shorman v. Eakin.

money, costs and incidental expenses, and it was there verbally agreed between the defendant and plaintiff that the said sum should be a charge and lien upon the premises, when purchased, to secure the repayment of said sum, with interest, at the rate of twelve per cent. per annum, in one year. The defendant agreed to waive the benefit of redemption, and that in default of the payment of said sum with the interest, within the time aforesaid, the premises might be sold, and that the sale should be absolute. It was further agreed that the terms of the agreement, and the charge upon the premises, should be evidenced by notes and mortgage, or other memoranda in writing, as the parties might be advised when the transaction should be consummated; and that in either case, the money advanced should be and remain a lien and charge on said premises; and that the duplicate of the defendant should be deposited with plaintiff to obtain and hold the patient as additional security. After the purchase of the land defendant evidenced her agreement in writing, in the form of a promissory note, and executed a memorandum in writing in the form of a mortgage, and, by a separate instrument, waived her right of redemption, and delivered her duplicate to the plaintiff, which he surrendered to the land office and obtained the patent." The court said: " The contract having been made prior to the purchase of the land by Ann Smith, is clearly within the prohibition of the thirteenth section of the Act of Congress of September 24, 1841, under which she pre-empted the lands mentioned in the complaint. The section provides, among other things, that before any person claiming the benefit of the act shall be allowed to enter any lands upon which he or she has settled, such person shall make oath that he or she has not, directly or indirectly, made any agreement or contract in any way or manner, with any person or persons whatever, by which the title he or she might acquire from the government of the United States shall inure, in whole or in

part, to the benefit of any person except himself or herself. The title, in this instance, which Ann Smith acquired, would, if the contract be valid, inure to the benefit of the plaintiff, to the extent of his charge or lien upon the premises. The contract is therefore illegal and void, and the note and mortgage, being the fruit of the contract, must fall with it." .

This decision was cited, approved and followed, by the supreme court of the United States, in *Warren v. Van Brunt, 19 Wall., 646.* See also *Brewster v. Madden, 15 Kans., 249.*

No title, therefore, acquired by Eakin under the homestead act, inured to the benefit of Burke or Shorman, as that would defeat the spirit and intent of the act, and be contrary to public policy; and for the same reason, they, or either of them, did not acquire any lien on account of Eakin's purchase from Burke.

But appellant contends that Eakin must first surrender possession of the land in question before he can contest the title of Burke. This is not true. He is not estopped to deny the title of Burke, as already shown. The trust relations and obligations, on which the rule relied on by the appellant rests, cannot legally exist between the homestead settler and any other person in respect to the land entered by the homestead settler before he is entitled to his patent. He renounces all such relations and obligations by the affidavit he makes upon applying to enter his homestead, when he swears that his application is made for his *exclusive* use and benefit, and that his entry is not made, *directly or indirectly*, for the use or benefit of any other person. He is required to remain, continuously, in possession of the land entered for the term of five years, immediately succeeding the filing of this affidavit, before his right to a patent is complete. If, before the expiration of the five years, he actually changes his residence, or abandons the land for more than six months at any time, the land reverts to the government. He is not, therefore, required to

surrender the possession of his homestead, during the five years, in order to contest the title of any person and assert his own, and surrendering six months or longer before the expiration of the five years, thereby incur the risk of losing his homestead by the delays of litigation over his title.

· Since Burke never had any title to the land sold to Eakin, and the title acquired by Eakin did..not inure to him, the note sued on was without consideration. It seems to us it would be against public policy to require Eakin to pay Burke or Shorman for the land, when it was the intention of the homestead act that he should have it for a nominal consideration, and this was an inducement offered to him by the national government to accept the terms of the act.

Decree affirmed.